UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 08-22922-CIV-MCALILEY
(CONSENT CASE)

FEDERAL TRADE COMMISSION,

    Plaintiffs,

v.

CLEAN CREDIT REPORT SERVICES,
INC., et al.

    Defendants.
_____/

## ORDER DENYING MOTION FOR FEES TO SCAGLIONE & QUESADA AND GRANTING MOTION TO TURN OVER ASSETS AND MOTION FOR FEES TO ANDRES MONTEJO, ESQ.

The law firm of Scaglione & Quesada, P.A. ("S&Q"), represented Defendants for the first year of this litigation, and then withdraw as defense counsel.[1] As this lawsuit winds to a close, S&Q has filed a motion to recover payment for its attorneys' fees for its efforts representing Defendants in this action. [DE 61]. Meanwhile, the Federal Trade Commission has filed a motion asking that S&Q be ordered to turn over funds in its possession to a bank account containing Defendants' frozen assets, so that those monies might be used for consumer redress and other equitable relief, and Defendants agree to the relief sought in the

---

[1] S&Q was permitted to withdraw on October 8, 2009. Andres Montejo, Esq. entered a notice of appearance at that time, and presently represents Defendants. [DE 49, 51, 53].

turnover motion. [DE 95].[2] Finally, Defendants' have filed a motion seeking to have their current counsel, Andres Montejo's attorneys' fees paid out of the frozen assets. [DE 103]. This Order resolves these motions as follows: I deny S&Q's motion for attorneys' fees and grant the FTC's motion to turnover assets and Defendants' motion for attorneys' fees.

I.  **Background**

On October 21, 2008, the FTC instituted this civil action against Defendants Clean Credit, Ricardo A. Miranda, Daniel R. Miranda, and Ruthy Villabona, alleging violations of the Credit Repair Organizations Act, 15 U.S.C. § 1679, and section 5(a) of the FTC Act, 15 U.S.C. § 45(a), in connection with Defendants' alleged fraudulent operation of a credit repair business. [DE 1]. Pursuant to sections 13(b) and 19 of the FTC Act, 15 U.S.C. §§ 53(b) and 57b, and section 410(b) of the Credit Repair Organizations Act, 15 U.S.C. § 1679(h)b, the FTC seeks preliminary and permanent injunctive relief and other equitable relief necessary to redress injury to consumers, including rescission of contracts, restitution and disgorgement; it also seeks to recover its costs. [DE 1, p. 9].

The Court entered a Temporary Restraining Order ("TRO") against Defendants on October 23, 2008. [DE 7]. Relevant to the motions at issue, the TRO defined an "asset" as "any legal or equitable interest in, right to, or claim to, any real or personal property . . ." [DE 7, p. 3], and ordered an asset freeze:

---

[2] The FTC and the Defendants recently filed a joint motion that asks the Court to approve a final judgment and permanent injunction they have agreed to [DE 102], which this Court grants by a separate order entered on this date.

Defendants and their officers, agents, directors, servants, employees, salespersons, independent contractors, attorneys, corporations, subsidiaries, affiliates, successors, and assigns, and all other persons or entities in active concert or participation with them who receive actual notice of this Order by personal service or otherwise, are hereby restrained and enjoined from:

A. Assigning, concealing, converting, disbursing, dissipating, encumbering, liquidating, loaning, pledging, selling, spending, transferring, withdrawing . . . or otherwise disposing of any funds, real or personal property, accounts . . . uncashed checks, or other assets, wherever located that are:

1. owned or controlled by, or in the actual or constructive possession of any Defendant;

2. owned or controlled by, or held for the benefit of, directly or indirectly, any Defendant, in whole of in part;

3. held by an agent of any Defendant as a retainer for the agent's provision of services to any Defendant; or

4. owned or controlled by, or in the actual or constructive possession of, or otherwise held for the benefit of, any corporation, partnership, or other entity directly or indirectly owned, managed, or controlled by, or under common control with, any Defendant, including, but not limited to, any asset held by or for any Defendant in any account at any bank . . . or with any escrow agent, title company . . . or other financial institution or organization of any kind;

***

**IT IS FURTHER ORDERED** that the assets affected by this Section shall include both existing assets and assets acquired after the effective date of this Order.

[DE 7, pp. 7-8]. The TRO also directed all asset holders, once they received notice of the Order, to hold and retain those assets and to notify the FTC that they have the assets. This requirement applied to both assets that existed at the time the TRO was entered, and those acquired after the effective date of the TRO. [*Id.*, pp. 10-11].

The TRO was followed by a preliminary injunction that was issued on October 31, 2008, [DE 15], by which time Defendants were represented by S&Q. The preliminary injunction incorporated the above-cited asset freeze provisions of the TRO, and provided that they would remain in effect until Defendants posted a $100,000.00 bond. [DE 15, pp. 2-3].[3] As counsel for Defendants, S&Q had notice of and was bound by both the TRO and the preliminary injunction. Defendants never posted the required bond, therefore the asset freeze remains in effect to this day. The preliminary injunction was later modified to allow the sale of certain assets, and the consolidation of all frozen funds in one Clean Credit bank account, at BancAtlantic (ending in 8514). [DE 39, 52].

Defendants' financial documents indicate that Defendants generated approximately $14.6 million in gross revenues through the operation of Clean Credit [DE 32-1, ¶ 4]; however, only about $165,000.00 remains available for consumer redress. [DE 62, p. 7].

According to the declaration of Lydia Quesada, a partner at S&Q, at the time the asset freeze was ordered, Defendants Ricardo Miranda and Ruthy Villabona had litigation pending,

---

[3] The preliminary injunction did unfreeze the assets of Clean Credit's sister corporations. [DE 15, p. 3, DE 18].

unrelated to this lawsuit, in connection with a failed real estate transaction. [DE 62-4, ¶ 5]. This litigation was resolved by agreement after the entry of the TRO and preliminary injunction,[4] and Defendants Miranda and Villabona received $35,000.00 in settlement. Those funds were deposited into S&Q's trust account and used to pay S&Q its attorneys' fees for various matters, including the real estate litigation and its representation of Defendants in this action. [*Id.*, ¶ 7]. Neither Defendants nor S&Q notified the FTC of Defendants' receipt of the $35,000.00, nor did they ask the Court's permission to distribute those funds to S&Q.

In October 2009, S&Q withdrew from its representation of Defendants and Montejo made a notice of appearance on their behalf. [DE 49, 51, 53]. Defendants had originally contacted Montejo about the possibility of declaring bankruptcy. [DE 103, ¶ 4]. During his discussions with Defendants, Montejo learned that S&Q had retained the $35,000.00 settlement sum after institution of the asset freeze, without permission from the Court. [DE 103, ¶ 5]. Montejo brought this matter to the attention of the FTC and provided amended financial statements for Defendants identifying the funds. [DE 62, p.2].

In January of this year S&Q brought its Motion for Entitlement to Attorney's Fees, in which it asked that the Court order that some of the Defendants' frozen assets go to S&Q, to compensate it for its remaining unpaid legal fees. [DE 61]. According to S&Q, Defendants owed it $46,530.00 in attorneys' fees for legal representation in this action, and

---

[4] According to S&Q, the settlement was reached late 2008. [DE 62-4, ¶ 5].

5

$8,850.00 for legal fees in the real estate litigation. S&Q advised that the $35,000.00 in settlement funds were used to fully compensate its for its real estate legal fees, and to partially compensate it (in the amount of $26,150.00), for S&Q's fees in this action. [DE 61, ¶¶ 10, 11]. Thus, S&Q asserts it is still owed $20,380.00 for its representation of Defendants in this action. S&Q asks the Court to award it its full attorneys' fees or, if the Court decides a less-than-full recovery is appropriate, to allow it to retain the $35,000.00, in partial payment of its fees. [*Id.*, ¶ 18].

The FTC opposes S&Q's motion. [DE 62]. In support of its opposition, the FTC filed detailed declarations by the individual Defendants about the circumstances surrounding Defendants' and S&Q's failure to comply with the asset freeze in connection with the settlement funds. S&Q replied that the Defendants' declarations, filed by the FTC, were perjurious. [DE 63].

Without conceding that the original declarations contained false information, the FTC withdrew the declarations [DE 64] and a few days later, filed significantly shorter amended declarations for Daniel and Ricardo Miranda. [DE 65]. S&Q moved to strike the amended declarations as violating Local Rule 7.1, which it read as requiring the FTC to seek the Court's permission to withdraw exhibits to the memorandum. [DE 68]. The FTC then filed a motion to withdraw the original declarations and substitute the amended declarations. [DE 69]. In light of the FTC's motion to withdraw, S&Q concedes that its motion to strike is moot [DE 97], but continues to oppose withdrawal of the original declarations, arguing that

the FTC should not be allowed to erase evidence of Defendants' perjury from the record. [DE 96].

With S&Q's motion for fees pending, the FTC, with the agreement of Defendants, filed a Motion for Turnover of Assets, asking the Court to order S&Q to turn over the $35,000.00 received by Defendants Ricardo Miranda and Ruthy Villabona in settlement of the real estate dispute, and to deposit that money into the BancAtlantic account containing the frozen assets, so that the money can be used to compensate defrauded consumers. [DE 95]. S&Q opposes the turnover motion for the same reasons that it argues justify it being awarded these funds (and more) to pay for its legal services. [DE 100].

The FTC and Defendants recently filed a joint motion asking the Court to approve a agreed final judgment and permanent injunction [DE 102] and Defendants have filed a motion seeking payment of Montejo's attorneys' fees, which the FTC does not oppose. [DE 103]. Defendants owe $12,880.00 in fees to Montejo for his representation of them in this matter; to date, Montejo has not received any compensation from Defendants. [DE 103, ¶¶ 9, 10]. In apparent recognition of the limited resources available, Montejo has agreed to reduce these fees to $8,000.00 as full payment for his services to Defendants, and asks to be compensated from the frozen assets. [DE 103, ¶ 12].

II. Analysis

    A. S&Q's Motion for Attorneys' Fees

Under § 13(b) of the Federal Trade Commission Act, 15 U.S.C. § 53(b), a district

court has broad discretion to employ its inherent equitable powers to, among other things, issue a preliminary injunction, including a freeze of assets, while an action for permanent injunctive relief is pending. *FTC v. U.S. Oil & Gas Corp.*, 748 F.2d 1431, 1434 (11th Cir. 1984). A necessary corollary to that power is the discretion to release or lower the amount of assets frozen, including for the payment of attorneys' fees or living expenses. *FTC v. RCA Credit Serv., LLC*, No. 8:08-cv-2062-T-27MAP, 2008 WL 5428039, * 4 (M.D. Fla. Dec. 31, 2008); *Commodity Futures Trading Comm. v. Noble Metals Int'l, Inc.*, 67 F.3d 766, 775 (9th Cir. 1995) (court has broad discretion to allow, or disallow, payment of attorneys' fees from frozen assets).

Another District Court in this Circuit recently considered whether to exercise its discretion to unfreeze assets to allow payment of attorneys' fees and in the process considered several factors: (1) whether the frozen assets fall short of the amount needed to compensate consumers for their losses, (2) whether defendants and their counsel complied with all of the court's requirements, and (3) whether they can show that the assets at issue were derived independent of the alleged fraudulent proceeds. *RCA Credit*, 2008 WL 5478039, at * 4; *see also Noble*, 67 F.3d at 775 (fact that frozen assets fell far short of the amount needed to compensate victims was reason enough to deny defense counsel's attorney fee application). In considering these factors, I am mindful of the fact that the Court's interest in the effective and economical resolution these types of matters is typically advanced by defendants having legal counsel.

At stake in S&Q's motion for fees is the $35,000.00 in settlement funds Defendants received and endorsed over to S&Q in November 2008.[5] All three factors considered by the Court in *RCA Credit* weigh in favor of this Court exercising its discretion to deny S&Q's motion for attorneys' fees.

### 1. The consumer loss is much greater than the available assets.

As an initial matter, the FTC calculates the amount of consumer losses resulting from Defendants' actions is approximately $14.6 million, and the assets currently available for restitution is about $165,000. Thus, Defendants' available assets fall far short of what is needed to compensate the victims of Defendants' fraud. While not dispositive, this disparity militates against unfreezing any assets to pay S&Q. This is particularly so, given my finding that S&Q violated the terms of the preliminary injunction when it retained the $35,000.00 settlement funds and applied those funds to Defendants' outstanding attorneys' fees, without the Court's approval.

### 2. Defendants and S&Q violated the asset freeze

Although some of the facts are contested by the parties,[6] the undisputed facts establish

---

[5] While S&Q asks to recover $46,530.00 it claims it is owed, the briefing focuses on the disposition of the $35,000.00 in settlement funds.

[6] In support of its opposition to S&Q's motion for fees, the FTC filed the sworn declarations of Defendants Ricardo Miranda, Ruthy Villabona and Daniel Miranda. [DE 62-1, 62-2, 62-3]. S&Q challenged these declarations, arguing that they contained perjured testimony. [DE 63, p. 1]. In response, the FTC moved to withdraw these declarations and replace them with amended declarations by Ricardo and Daniel Miranda. [DE 69]. S&Q opposed the motion to withdraw and replace. [DE 96]. While I am troubled by the FTC's apparent failure to, at minimum, confirm the accuracy of the declarations before filing them, as it turns out I do not need to rely on either the

9

that, at the time the asset freeze was ordered, Miranda and Villabona were litigating their real estate claim and were represented by S&Q. [DE 62-4, ¶ 5]. In late 2008, while the asset freeze was in place, Defendants Miranda and Villabona received a $35,000.00 settlement of that litigation. Those settlement funds were "assets" as defined in the TRO and preliminary injunction.

The preliminary injunction prohibited Defendants and their attorneys from assigning, disbursing, dissipating or otherwise disposing of any assets controlled by, or in the actual or constructive possession of any Defendant. [DE 7, p. 8]. The preliminary injunction further required any person "having possession, custody or control of any assets" to retain the assets and provide the FTC with notice of the assets. [DE 7, pp. 9-10].

S&Q represented Defendants when the preliminary injunction was entered, and clearly had notice of that order. It nevertheless accepted this asset from Defendants and applied the funds toward attorneys' fees Defendants owed S&Q, without seeking Court approval. S&Q did this in direct violation of the asset freeze and I find S&Q's disregard of the asset freeze to be a dispositive factor in denying its entitlement to fees. S&Q's actions in wrongfully retaining the $35,000.00, had they not later been exposed by Defendants' current counsel, would have deprived the victims of Defendants' scheme of a significant portion of the funds available for restitution.

---

original or amended declarations to resolve the motion for fees. To ensure a complete record in this matter, however, I grant in part the motion to withdraw and substitute. Specifically, I deny the motion to withdraw the original declarations, and grant the motion to the extent it asks to add the amended declarations to the record.

### 3. S&Q has not shown the assets were derived independent of the fraud

Lastly, S&Q has not shown that the assets at issue were derived independent of the alleged fraudulent proceeds. The FTC is not required to trace frozen assets directly to the alleged violations in an action under § 13(b) of the FTC Act, in order to use those assets to redress consumer fraud; moreover, Defendants did not challenge the scope of the asset freeze, which plainly encompasses the funds at issue. *FTC v. Windward Marketing, Ltd.*, 1:96-CV-615-FMH, pp. 5-6 (slip op. May 22, 1996) (attached at DE 62-5). S&Q did argue in its motion that the $35,000.00 "appears to have come from proceeds unrelated to Defendant Clean Credit Report Service, Inc.,"[DE 61, p. 5], but it provides no factual support for this assertion. Moreover, S&Q contradicts this claim in its reply memorandum where it states it can not recover its fees from Defendants' sister corporations (which are not subject to the asset freeze) because "[Clean Credit] was the $14MM trough, and its sister corporations, the individual defendants, and their surrounding family members all fed from that $14MM trough." [DE 63, p. 6].

Because Defendants and S&Q violated the terms of the asset freeze, the frozen assets in this action fall far short of the amount needed to compensate consumers for their losses, and because S&Q has not shown that the funds were derived from sources wholly independent of the alleged fraudulent proceeds, I exercise my equitable power to deny S&Q's motion for attorneys' fees.

### B. Motion to Turn Over Assets

The FTC, with the agreement of Defendants, asks me to order S&Q to turn over the $35,000.00 to Defendants' frozen BancAtlantic account, pending settlement of this action. Under the parties' proposed settlement, any funds in the frozen BancAtlantic account are to be used for consumer redress or other equitable relief. I have determined that S&Q has no right to the funds and Defendants concede that the funds should be placed in the frozen BancAtlantic account pending settlement of this action. Thus, I direct S&Q to turn over $35,000.00 to Defendants' frozen BancAtlantic account ending in 8514.

### C. Montejo's motion for attorneys' fees

Defendants owe $12,880.00 in fees to their current counsel, Andres Montejo, for his representation of them in this matter since October 2009, and Montejo has received no compensation to date. [DE 103, ¶¶ 9, 10]. Defendants move for an Order awarding Montejo his fees from the frozen assets. In apparent recognition of the limited resources available, Montejo asks for payment of only $8,000.00 from the frozen assets. [*Id.* at ¶ 12]. The FTC does not oppose this request for fees.

In determining Montejo's entitlement to payment of his attorneys' fees from Defendants' frozen assets, I again exercise my broad equitable powers in light of the three factors set forth above: (1) whether the frozen assets fall short of the amount needed to compensate consumers for their losses, (2) whether defendants and their counsel complied with all of the court's requirements, and (3) whether they can show that the assets at issue

were derived independent of the alleged fraudulent proceeds. *RCA Credit*, 2008 WL 5478039, at * 4.

As already stated, Defendants' available assets fall far short of what is needed to compensate the victims of Defendants' fraud. However, by advising Defendants to disclose to the FTC the $35,000.00 wrongfully retained by S&Q, Montejo ultimately increased the funds available to provide restitution to Defendants' victims. As a result, this factor does not weigh heavily against Montejo.

I find that Montejo's actions in providing amended financial statements disclosing the $35,000.00 to the FTC, and thus, enhancing the assets available for restitution and other relief (contrasted with S&Q's violation of this Court's Order), is the critical difference between S&Q's and Montejo's request for attorneys' fees. While S&Q acted in a manner calculated to benefit itself at the expense of Defendants and the victims of Defendants' scheme, Montejo acted in the interests of his clients and the victims. Stated another way, Montejo's actions in this matter increased the amount of money available to compensate the victims of Defendants' fraudulent scheme; S&Q's actions did just the opposite.

S&Q argues that Montejo is not entitled to any attorneys' fees because he provided the disputed declarations of the individual Defendants that were attached to the FTC's opposition to S&Q's motion for fees and led to additional motion practice, expense and delay. [DE 104, ¶¶ 5-8]. While I ultimately did not rely on any of the declarations in deciding S&Q's motion for fees, it is clear from the record that the filing of the original

declarations did result in a flurry of arguably unnecessary filings.

Ordinarily, I would reduce any fee award to Montejo by the time spent preparing the original declarations and the related motion. However, Montejo has already significantly reduced his fees, first by cutting the billing rate he is charging Defendants from his usual rate of $300 per hour to a rate of $200 per hour, and then by agreeing to take approximately 62% of the reduced attorneys' fees as full payment. [DE 103, ¶¶ 11-12]. Thus, a reduction in fees to compensate for additional motion practice caused by the original declarations is unnecessary. As for the final factor, Defendants do not attempt to argue that the assets at issue were derived independent of the alleged fraudulent proceeds.

Because Montejo's representation of Defendants ultimately resulted in a significant increase in the amount of asset available to compensate victims of the fraudulent scheme, I exercise my equitable power to grant Defendants' motion to award Montejo $8,000.00 in attorneys' fees out of Defendants' frozen assets.

Based on the foregoing, the Court ORDERS that:

1. The Scaglione & Quesada, P.A.'s Motion for Entitlement to Attorneys' Fees [DE 61], is **DENIED**.

2. The Plaintiff FTC's Motion to Withdraw Declarations (Attachments A-C) Supporting Plaintiff FTC's Response in Opposition to Motion for Entitlement to Attorney's Fees Filed by Scaglione & Quesada, P.A. and to Substitute with Amended Declarations [DE 69], is **GRANTED IN PART**: the original declarations will not be withdrawn from the

record, but the amended declarations will be added to the record

3. Scaglione & Quesada', P.A.'s Motion to Strike Plaintiff FTC's Submission of Amended Attachments A & C [DE 68] is **DENIED AS MOOT**.

4. The Agreed Motion for Turnover of Assets [DE 95] is **GRANTED**. Scaglione & Quesada shall transfer $35,000.00 to Defendants' frozen BancAtlantic account ending in 8514 **no later than August 6, 2010**.

5. Defendants' Motion for Entitlement to Attorneys' Fees [DE 103] is **GRANTED**. Defense counsel, Andres Montejo shall receive a payment of $8,000.00 from the frozen assets at the time the assets are disbursed pursuant to the final judgment in this matter.

DONE and ORDERED in chambers in Miami, Florida this 23rd day of July, 2010.

CHRIS McALILEY
UNITED STATES MAGISTRATE JUDGE

cc: Counsel of record